```
                                                            United States District Court
                                                             Southern District of Texas
                                                                     ENTERED
          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS                       FEB 26 2004
                  CORPUS CHRISTI DIVISION
                                                            Michael N. Milby, Clerk of Court
```

| | |
|---|---|
| DIRECTV, INC., | § |
| | § |
| V. | § C.A. NO. C-03-346 |
| | § |
| GARY GARNETT | § |

## ORDER GRANTING DEFENDANT GARNETT'S
## MOTION FOR SUMMARY JUDGMENT

In a six-count complaint filed on September 10, 2003, plaintiff DIRECTV, Inc. ("DIRECTV") sued defendant Gary Garnett ("Garnett") alleging that Garnett illegally intercepted DIRECTV satellite signals in violation of federal and state law. DE #1.    On October 24, 2003, the Court, *sua sponte*, dismissed DIRECTV's claim brought pursuant to 18 U.S.C. § 2512 (count 3). DE #7.   On December 15, 2003, Garnett filed a motion for summary judgment to dismiss DIRECTV's remaining claims against him. DE #19. DIRECTV has filed a response in opposition. DE #34.   For the reasons stated herein, the Court grants Garnett's motion for summary judgment.

### I. JURISDICTION

The Court has federal question jurisdiction. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. §1367. By Order of Reference entered January 16, 2004, DE #28, this action was referred to the undersigned to conduct all further proceedings, including the entry of final judgment. 28 U.S.C. § 636(c).

## II. BACKGROUND INFORMATION AND DIRECTV'S CAUSES OF ACTION

DIRECTV is in the business of distributing satellite television broadcasts throughout the United States. POC [1] at ¶ 2. It charges a fee to use its television broadcast services. POC at ¶4. A customer can purchase a satellite dish to receive the broadcast services, but DIRECTV uses encryption technology to scramble the signal. POC at ¶ 3. In order to descramble the signal, a customer must have a satellite receiver with a removable access card that manages the opening and closing of television channels offered by DIRECTV. POC at ¶3. The access card holds a computer chip which can be programmed by DIRECTV to provide different programming packages, including pay-per-view movies or professional sports packages, to its customers, who pay a subscription fee. POC at ¶ 4. Despite the encryption technology, devices and equipment have been developed to surreptitiously pirate DIRECTV's signals and illegally program valid access cards so that individuals may gain access to all of DIRECTV's programming without payment for these services. POC at ¶ 5.

DIRECTV has conducted raids on businesses which market and sell devices, equipment and software which can be used to intercept DIRECTV satellite communications. POC at ¶ 5. DIRECTV refers to this equipment as "pirate access devices." POC at ¶ 5. On or about May 25, 2001, DIRECTV, aided by law enforcement officers, executed writs of seizure at a mail shipping facility used by several major distributors of pirate access devices. POC at 8. As a result of the raids, DIRECTV obtained shipping records, electronic mail communications, credit card and other receipts

---

[1] "POC" refers to plaintiff's original complaint, filed at DE #1.

reflecting distribution of devices designed for the unauthorized interception of DIRECTV's satellite programming. POC at 8.

DIRECTV alleges that on September 18, 2000, defendant Garnett purchased one or more pirate access devices from a distributor known as Whiteviper. POC ¶ 18. In particular, Garnett purchased a combination package invoiced as a "(Combo) Viper Reader/Writer + Whiteviper unlooper." POC ¶ 18. DIRECTV alleges that the reader/writer, also known as a programmer, is primarily designed to permit the illegal programming of valid DIRECTV access cards for the sole purpose of obtaining access to DIRECTV satellite programming without paying DIRECTV. POC ¶ 18. DIRECTV claims that the unlooper is designed to repair access cards that have been rendered unusable by illegitimate use and is specifically designed to use with certain software further permitting the illegal programming of valid DIRECTV access devices. POC ¶ 18.

DIRECTV claims that Garnett's possession of the pirate devices, combined with his past subscription to DIRECTV, is evidence that Garnett illegally intercepted DIRECTV's satellite programming. Specifically, DIRECTV alleges the following claims:

> Count 1. Garnett (1) effected unauthorized interception and receipt of satellite programming through the use of illegal satellite decoding devices or by manipulation of the satellite system or by other means known only to him; (2) without authorization, intercepted, received, exhibited or otherwise assisted in the unauthorized interception, reception and exhibition of Satellite Programming transmitted by DIRECTV; and (3) used the communications for his own benefit or for the benefit of others who were not entitled to such communications in violation of 47 U.S.C. § 605(a).
>
> Count 2. Garnett intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV and that he disclosed or endeavored to disclose to others the contents of electronic communications knowing, or having a reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511.

Count 4. Garnett knowingly manufactured, assembled or modified an electronic, mechanical or other device or equipment knowing or having reason to know that the device or equipment is used primarily to facilitate the unauthorized decryption of satellite programming or direct-to-home satellite services or other prohibited activity. DIRECTV further alleges that Garnett programmed and reprogrammed DIRECTV access cards and designed electronic systems for use in surreptitiously obtaining DIRECTV satellite programming and that by removing and inserting pirate access devices and/or inserting illegally programmed access cards into valid DIRECTV receivers, he engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of satellite programming, in violation of 47 U.S.C. § 605(e)(4).

Count 5. Garnett unlawfully, intentionally and wrongfully converted DIRECTV's property for his own commercial use and benefit.

Count 6. Garnett's acquisition and use of pirate access devices violates Chapter 123 of the Texas Civil Practice and Remedies Code.

### III. GARNETT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTV'S RESPONSE

Garnett seeks summary judgment against DIRECTV alleging that DIRECTV has produced no evidence to support a critical element of its claims: that Garnett intercepted signals without authorization and in which DIRECTV has a proprietary interest. D-SJM[2] ¶ 3. In his affidavit in support of his motion for summary judgment, Garnett states that he never intercepted or even attempted to intercept DIRECTV's signal without authorization. D-SJM, Exh. A, Garnett Aff't. He explains that he sought to learn about [smart card] technology for use in his business, but that he never received all the equipment he ordered [from Whiteviper], and that his project never got off the ground. Id. He claims that he received DIRECTV's signal, but only as a paying customer of DIRECTV. D-SJM ¶ 3.

---

[2] "D-SJM" refers to defendant Garnett's motion for summary judgment, DE #19.

In response to Garnett's motion for summary judgment, DIRECTV offers the following evidence:

> Exh. A– Affidavit of Bill Gatliff, an electrical engineer with a formal background in computer science. Mr. Gatliff states that the Whieviper reader/writer and unlooper can be used to circumvent DIRECTV's conditional access system. Gatliff Aff't at 5-9.
>
> Exh. B– Affidavit of Carol Fong-Hilton, a DIRECTV supervisor, authenticating Garnett's DIRECTV account records, and those of his ex-wife.
>
> Exh. C– Declaration of Michael Houck, a paralegal in a Seattle law firm, verifying that attached exhibits are true and correct copies of information printed from Whiteviper's internet site. This declaration was filed in DIRECTV's lawsuit against Derek E. Trone d/b/a Whiteviper Technologies (the "Whiteviper lawsuit").
>
> EXH. D – Affidavit of Michael Houck, stating that, pursuant to a settlement in the Whiteviper lawsuit, Trone turned over certain business records, and that the email attached as Exhibit A, dated September 18, 2000, refers to an order to be billed and shipped to Garnett.
>
> Exh. E – Copy of Order entered in the Whiteviper lawsuit. DIRECTV contends that this Order adjudicates "the question of the primary function of the devices in question."
>
> Exh. F – Copy of Order entered in an Ohio lawsuit.
>
> EXH G– Deposition of Gary Garnett.

See P-SJR.[3]

In his deposition, Garnett testified that his partner, Donnie Ham, purchased two DIRECTV subscriptions for their construction company, H & G. Corporation. P-SJR, Exh. G, Garnett Depo. at 23-24. One subscription was for the office, and the other was for a deer lease in McMullen County. Garnett Depo at 23-24. The DIRECTV was activated 12 months a year at the office, and at the deer lease during deer season only. Id. at 24. Garnett has never had DIRECTV at a residence. Id. at 26.

---

[3]"P-SJR" refers to plaintiff DIRECTV's summary judgment response, filed at DE #34.

Garnett became interested in smart card technology for use at his company to keep track of his 60 to 80 employees and work tools. Garnett Depo at 32. He spoke to two individuals about the use of employee identification badges. Id. at 32-34. Within a few months after discussing it, Garnett ordered from Whiteviper a reader/writer and an unlooper. Id. at 34-40. He only received one device. Id. at 50. He attempted to contact Whiteviper through email and phone calls to tell it that his order was incomplete, but no one returned his calls or email. Id. at 50-51. He did not pay for the device he did not receive, and received credit for it on his credit card. Id. at 51-52.

Garnett did not attempt to use the device he did receive. Garnett Depo. at 54. Garnett gave up on his idea of using smart cards at H & G. Id. at 54.

### IV. **SUMMARY JUDGMENT STANDARD**

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552; Anderson v. Liberty

Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990). Summary judgment is mandated if, after adequate time for discovery and upon motion, the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23, 106 S. Ct. at 2552. See also Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 257 (5th Cir. 2001).

### V. **DISCUSSION**

**1.    Violation of 47 U.S.C. § 605(a) and § 604(e) (counts 1 and 4).**

In counts 1 and 4, DIRECTV alleges that Garnett received and assisted others in receiving DIRECTV's satellite transmissions in violation of the Cable Communications Act of 1984, 47 U.S.C. § 605(a) and § 605(e)(4). A critical element in each of these claims is proof that Garnett intercepted and/or unlawfully appropriated a signal in which DIRECTV has a proprietary interest.

Section 605(a) of Title 47 prohibits any unauthorized person from "receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio" and then "divulg[ing] or publish[ing]" that material except through authorized channels. The Communications Act further authorizes "any person aggrieved" by a violation of 47 U.S.C. §

7

605(a) to bring a civil action in federal court. 47 U.S.C. § 605(d)(6). Therefore, in order to prevail on a cause of action under this statute, DIRECTV has the burden of showing that a communication in which DIRECTV had proprietary rights was actually intercepted and then divulged. See DIRECTV, Inc. v. Karpinsky, 269 F. Supp.2d 918, 926 (E.D. Mich. 2003), vacated in part upon reconsideration, 274 F. Supp.2d 918 (E.D. Mich. 2003); Joe Hand Promotions, Inc. V. Rennard Street Enter., Inc., 975 F. Supp. 746, 753 (E.D. Pa. 1997). That is, DIRECTV cannot simply allege that it possesses evidence that Garnett bought a device that was, in principle, capable of intercepting its signal.

DIRECTV argues that its uncontroverted circumstantial evidence raises a fact issue on the question of whether Garnett pirated DIRECTV broadcasts because it establishes that Garnett: (1) had DIRECTV access; and (2) purchased pirate devices. It argues that these facts, in combination with Garnett's subscriber history, P-SJR Exh. B, raise such a fact issue.

It is true that a plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence. See Walker v. Darby, 911 F.2d 1573, 1578 (11th Cir. 1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including interception). In this case, however, the circumstantial evidence does not raise a fact issue as to an essential element of DIRECTV's claims, that is, actual or even attempted interception of the signal. Nor does DIRECTV point to cases supporting its argument that its evidence raises a fact issue.

In V–Cable, Inc. v. Guercio, 148 F. Supp. 2d 236 (E.D.N.Y. 2001), the plaintiff alleged that the defendant violated 47 U.S.C. § 605(a) by purchasing and using or distributing pirate cable descrambling devices. The court held that the plaintiff failed to show that it was an "aggrieved

8

party" entitled to bring an action for violation of § 605(a) because there was no evidence that the defendant distributed or used the pirate devices within the plaintiff's market area or elsewhere. The court stated:

> A perusal of the statutes underlying the present action indicates that it is not a crime, nor a basis for a civil claim, for an individual to purchase or possess pirate descrambling devices, even if it appears that possession is with the intent to distribute....

V–Cable, 148 F. Supp. 2d at 242-43.

The court in V–Cable also observed that there was no evidence that the defendant decreased the level of his cable service following his receipt of the descrambler, which "arguably would be some evidence of his usage of an illegal device," and there was no testimony from the defendant, his family members, or neighbors, that they viewed programming beyond that covered by the defendant's subscription. Id. at 244-45.

Similarly, in a recent unpublished decision, Judge Sim Lake granted a defendant's motion for summary judgment against DIRECTV on its § 605(a) and § 605(e) claims. The Court found that, although the defendant admitted to having purchased and distributed a device described in § 605(e)(4), DIRECTV offered no evidence that the defendant actually used the device to intercept one of DIRECTV's signals, and therefore, it did not have standing under the Communications Act as an aggrieved party. See DIRECTV v. Bush, C. A. No. H-03-1765 (S.D. Tex., Oct. 24, 2003).

The Court is aware of two Michigan district court decisions denying a defendant's motion for summary judgment based on DIRECTV's circumstantial evidence: DIRECTV v. Barnes, __ F. Supp. 2d __, 2004 WL 302341 (W.D. Mich., Feb. 2, 2004) and DIRECTV v. Karpinsky, 274 F. Supp. 2d 918, 921 (E.D. Mich.2003). In both of those cases, DIRECTV produced evidence that (1) the defendant was a DIRECTV subscriber who possessed the necessary equipment to intercept

9

DIRECTV's signal; (2) the defendant purchased a pirate device; (3) the defendant *admitted* that he was aware that the pirate device could be used to intercept DIRECTV's signal *and that he had purchased the device for that purpose*; and (4) the unlooper had no legitimate purpose. Barnes, 2004 WL 302341 at *8; Karpinsky, 274 F. Supp. 2d at 921.

The two Michigan cases are distinguishable from the case at bar because Garnett emphatically denies having had knowledge of the pirating capabilities of the devices he purchased, and denies that he purchased them with the intent to intercept signals. P-SJR, Exh. G, Garnett Depo. at 30-31. DIRECTV offers no evidence to rebut Garnett's assertions: it does not offer any statements from friends or neighbors that Garnett admitted to gaining DIRECTV access without paying for it. There is no indication that Garnett has special training or more than a layman's understanding of computers.

Moreover, Garnett's subscriber records do not raise an inference of pirate activity. DIRECTV argues that Garnett's account is suspiciously lacking in "call-backs" (pay-for-view purchases) except for the Holyfield-Lewis fight. However, those same records indicate that Garnett was paying DIRECTV a monthly fee ranging from $ 30.00 to over $100.00 from September 1999 through March/April 2001. P-SJR Exh. B. That he did not spend more money purchasing pay-for-view programming in addition to his monthly fee is hardly evidence of illegal activity, and the fact that he did order and pay for the Holyfield-Lewis fight is evidence mitigating against such an inference. Further, there is no correlation between Garnett's purchase of the device in September 2000 with a corresponding decline in DIRECTV billing or use. See V-Cable, *supra*, 148 F. Supp. 2d at 244-45 (suggesting that decreased activity in cable service could be some evidence of pirating activity).

Finally, Garnett testified that, even though he ordered a reader/writer and an unlooper, he only received one device, and he is not even sure which device he got. Id. at 50. He never attempted to use it. Id. at 54. Although DIRECT"s expert states that there is no legitimate purpose for the unlooper other than to alter DIRECTV access cards,[4] he acknowledges that even "dumb" reader/writers are used in the legitimate business community, and opines only that a reader/writer *could* be used to circumvent DIRECTV access. P-SJR Exh. B, Gatliff Aff't at 5, 8. Thus, DIRECTV's circumstantial evidence fails to establish that Garnett even had the equipment necessary to illegally intercept DIRECTV's signal.[5]

This case is most similar to Bush. Although Garnett admits to having a purchased a device described in 47 U.S.C. § 605(e)(4), DIRECTV has offered no evidence that he actually used the device to intercept one of DIRECTV's signals such that it has standing to sue under the Act as an aggrieved person. According, the Court grants Garnett's motion for summary judgment on claims 1 and 4.

   2.   **Violation of 18 U.S.C. § § 2511 and 2512 (count 2).**

DIRECTV also sues Garnett for violations of § 2511 (count 2) and § 2512 (count 3). As previously mentioned, the Court *sua sponte* dismissed DIRECTV's § 2512 claim finding that

---

[4]Garnett does not attempt to refute this assertion; however, even Gatliff admits that unloopers are marketed as "smart card repair terminals" that load new software or date into memory. P-SJR Exh. B, Gatliff Aff't at 5.

[5]The Gatliff affidavit also contains several conclusions that appear to be beyond the scope of the affiant's expertise or the support for which is not included in the affidavit. See, e.g., page 4 ("Individuals and businesses involved in facilitating piracy generally...." and "Persons involved in piracy generally...."); p 7 ("Developers of legitimate products... would not purchase preflashed chips at their higher prices."); p 9 ("The White Viper reader/writer was itself marketed for the purpose of circumventing DIRECTV's... access controls."). Because DIRECTV fails to raise a fact issue as to an essential element of its claims, however, it is unnecessary to address these conclusions.

DIRECTV could not maintain such a claim for mere possession of a pirate access device.[6] See DE #7.

Section 2520, the enforcement provision of the Electronic Communications Privacy Act of 1983, 18 U.S.C. §§ 2510 et seq. ("ECPA") authorizes a civil action by "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter ..." 18 U.S.C. § 2520. To prevail on such a claim, DIRECTV must prove that the communication in question was "intercepted, disclosed, or intentionally used." Id. As previously discussed, all DIRECTV has offered are allegations that Garnett purchased a device capable of such interception. Garnett is granted summary judgment on DIRECTV's claim 2.

### 3. Civil conversion and violations of the Texas Civil Practice and Remedies Code.

DIRECTV alleges that Garnett is liable for civil conversion and that he violated Tex. Civ. Prac. & Rem. Code §§ 123.001, et seq. Proving conversion requires proving actual theft. P & T Mfg. Co., Inc. v. Exchange Sav. & Loan Ass'n, 633 S.W.2d 332, 333 (Tex. App.—Dallas 1982, writ ref'd, n.r.e.) (finding that conversion is only complete "where a person unlawfully and wrongfully exercises dominion and control over the property of another to the exclusion or defiance of the right of possession of the owner or of the person entitled to the possession of the property involved"). DIRECTV offers no evidence of conversion. See DIRECTV v. Bush, C. A. No. H-03-1765 (S.D. Tex., Oct. 24, 2003).

---

[6]Garnett has filed numerous copies of opinions and/or orders from other district courts in various DIRECTV cases. See DE #21, #26, #33, #35. The bulk of the opinions and/or orders dealt with the issue of whether DIRECTV may maintain a claim for violation of 18 U.S.C.§ 2512 based upon mere possession of a pirate access device, an issue already decided in Garnett's favor. See DE #7.

By contrast, Tex. Civ. Prac. & Rem. Code § 123.002 creates a cause of action such that a party to a communication may sue a person who "intercepts, attempts to intercept, or employs or obtains another to intercept or attempt to intercept" a communication covered by the statute. Although under § 123.002 a plaintiff need only prove that the defendant attempted to intercept the communication, DIRECTV has presented no summary judgment evidence that Garnett attempted to do so. Bush, *supra*. Garnett is entitled to summary judgment on claims 5 and 6.

## VI. CONCLUSION

DIRECTV offers no evidence that would enable a reasonable jury to find for it on a critical element of each of its claims: that Garnett intercepted or attempted to intercept a communication in which DIRECTV had a proprietary interest. Accordingly, Garnett's motion for summary judgment is GRANTED. DIRECTV's claims against Garnett are dismissed.

ORDERED this __25__ day of February, 2004.

_____
JANE COOPER-HILL
UNITED STATES MAGISTRATE JUDGE