| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| DIRECTV, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:03-CV-307 |
| | § | |
| NEAL MOSIER, RANDY SMITH, | § | |
| DEMETRIUS SMITH, CHRIS STEWTS, | § | |
| ROY TATARCHUK, HARLAN WALKER, | § | |
| CURT WILLIAMS, and LINN WOODS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Christ Stewts's ("Stewts") Motion for Summary Judgment (#37). Stewts seeks summary judgment on Plaintiff DIRECTV, Inc.'s ("DIRECTV") action asserting that he participated in the surreptitious purchase, possession, and use of, or assisting others to use, devices designed to intercept and decrypt DIRECTV's protected satellite communications. In its complaint, DIRECTV alleges violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605(a), 605(e)(3)(4) ("FCA"), the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2511-12 (the "Wiretap Act"), the Texas Wiretap Act, TEX. CIV. PRAC. & REM. CODE ANN. § 123.001, *et seq.*, and civil conversion under Texas common law. DIRECTV has indicated that it will not pursue the cause of action for civil conversion; therefore, that claim is deemed withdrawn and will not be addressed. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

I.      Background

DIRECTV is one of the nation's leading providers of subscription-based satellite television programming. In order to receive DIRECTV's programming, a subscriber must possess a satellite dish, a DIRECTV indoor satellite receiver, and a DIRECTV access card to unscramble the signals. Once a DIRECTV subscription fee is paid, DIRECTV electronically directs the access card to unscramble portions of the satellite signal, allowing customers to view programs on their television. The access cards are electronically programmed to block or unblock television channels and specific programs to include only the programming for which the subscriber has paid.

Despite DIRECTV's efforts to prevent unauthorized receipt and use of its signal, individuals have sought to decrypt and intercept DIRECTV's signal illegally by using various devices and equipment, collectively referred to as "pirate access devices." The use of such devices can provide access to all of DIRECTV's satellite programming without payment to the company. On May 25, 2001, DIRECTV executed writs of seizure at a mail shipping facility used by several major distributors of pirate access devices, including Vector Technologies, DSS-Stuff, Shutt, Inc., Whiteviper, and DSS-Hangout. As a result, DIRECTV obtained shipping records, e-mail communications, and credit card receipts identifying purchasers of pirate access devices.

According to DIRECTV's complaint, on or about May 1, 2001, Stewts purchased two devices from Vector Technologies, each invoiced as a "Vector Super Unlooper with SU2 Code." At deposition, Stewts admitted placing the order with Vector Technologies and receiving the devices. He further testified that he placed three additional orders with Canadian Security and Technology Company in June 2001, purchasing, in total, five MKII Cobolt ISO 7816 Unloopers,

2

two MKII Emulator Packages, and one Cobalt Series Emulator. Stewts claims that the third order was a replacement for the second order, which was lost in the mail. The quantities listed on the orders, however, are different. Stewts contends that he ordered these devices in an attempt to build a computer security system for his personal use. Although the devices are not illegal and have legitimate uses, they can be and have been used to pirate DIRECTV's satellite signal.

It is undisputed that Stewts has never been a customer of DIRECTV. He subscribed to DishNetwork, a similar satellite television provider, from 1998 to 2000, and still has a DishNetwork satellite attached to his house. Stewts testified at deposition that he gave the DishNetwork satellite receiver to his son-in-law in 2000. He also bought another satellite receiver, which he purportedly gave to his son sometime during 2000. The brand of the second satellite receiver is unclear, although DIRECTV does not allege or proffer evidence that it was a DIRECTV receiver. Stewts further testified that after it became apparent that he would be unable to construct a computer security system, he threw the access devices he had purchased in the trash.

Stewts moves for summary judgment on all of DIRECTV's claims on the ground that it has produced no evidence to support the contention that Stewts intercepted or assisted in intercepting DIRECTV's satellite signal.

II. Analysis

    A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The

party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *see Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322-23;

*Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000); *Colson*, 174 F.3d at 506; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001); *Colson*, 174 F.3d at 506. The evidence of the non-movant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990); *Anderson*, 477 U.S. at 255; *Martinez*, 338 F.3d at 411; *Harken Exploration Co.*, 261 F.3d at 471; *Christopher Vill. Ltd. P'ship v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999); *Merritt-Campbell, Inc.*, 164 F.3d at 961; *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).

Nevertheless, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts,"

conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Anderson,* 477 U.S. at 247-48; *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir. 1997), *cert. denied*, 525 U.S. 1103 (1999); *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 540; *see Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Wenner v. BDM Enters., Inc*, 123 F.3d 321, 324 (5th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

  B. <u>Objections to Defendant's Summary Judgment Evidence</u>

  DIRECTV objects to Stewts's inclusion of news articles from a newspaper, a magazine, and a news website as summary judgment evidence on the grounds that the statements in the documents are hearsay in violation of the Federal Rules of Evidence. Generally, newspaper articles constitute inadmissible hearsay and are unusable to support or defeat summary judgment. *See Dallas County v. Commercial Union Assur. Co.*, 286 F.2d 388, 392 (5th Cir. 1961); *Anchee*

*v. Port Drum Co.*, 197 F. Supp. 2d 723, 730 n.5 (E.D. Tex. 2002); *Ladner v. City of N.Y.*, 20 F. Supp. 2d 509, 519 (E.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir.), *cert. denied*, 528 U.S. 1006 (1999); *Barnes Found. v. Township of Lower Merion*, 982 F. Supp. 970, 996 (E.D. Penn. 1997); *Dowdell v. Chapman*, 930 F. Supp. 533, 541 (M.D. Ala. 1996); *Tilton v. Capital Cities/ABC, Inc.*, 905 F. Supp. 1514, 1544 (N.D. Okla. 1995), *aff'd*, 95 F.3d 32 (10th Cir. 1996), *cert. denied*, 519 U.S. 1110 (1997). "Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial." *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) (citing *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)); *see Okoye v. University of Tex. Health Sci. Ctr.*, 245 F.3d 507, 510 (5th Cir. 2001) (noting that hearsay statements are not competent summary judgment evidence); *Garcia v. Reeves County*, 32 F.3d 200, 203 (5th Cir. 1994) (inadmissable hearsay will "not be enough to get past the summary judgment hurdle").

Here, the news articles relied upon by Stewts are inadmissible hearsay because they are offered to prove the truth of the matter asserted—that smart cards have many functions and are not limited to being used solely by DIRECTV. *See Anchee*, 197 F. Supp. 2d at 730 n.5; *Barnes Found.*, 982 F. Supp. at 996 (citing FED. R. EVID. 801(c)). The articles are not sworn or certified, and the authors were not subject to cross-examination, rendering them incompetent summary judgment evidence. *See Dowdell*, 930 F. Supp. at 541. Thus, any statements made or alluded to in the articles cannot be considered as evidence supporting Stewts's motion for summary judgment. *See Anchee*, 197 F. Supp. 2d at 730 n.5 (citing *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 401 (5th Cir. 1985); *Dallas County*, 286 F.2d at 392).

C.  Section 605(e)(3)(C) of the FCA

Stewts contends he is entitled to summary judgment on DIRECTV's claim that he violated § 605(a) of the FCA because DIRECTV has not produced any evidence that he actually intercepted its satellite signal. Section 605(a) provides in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and such use (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

To have standing to bring a civil action for damages under § 605(e)(3) of the FCA, DIRECTV must offer evidence that it is an aggrieved party. Hence, DIRECTV must demonstrate that Stewts actually intercepted, received, or assisted in receiving DIRECTV's proprietary satellite transmissions. See *DIRECTV, Inc. v. Beauchamp*, No. 2:02-CV-200, 2004 WL 302346, at *4 (W.D. Mich. Feb. 2, 2004); *DIRECTV v. Moreno*, No. 03-2478, 2003 WL 22927883, at *2 (D.N.J. Dec. 11, 2003); *DIRECTV, Inc. v. Bush*, No. H-03-1765, slip op. at 5 (S.D. Tex. Oct. 27, 2003).

Stewts admits to purchasing the access devices but maintains that he planned to use them to build a security system and not to intercept or receive DIRECTV's satellite signal. Stewts contends that it would be impossible for him to pirate DIRECTV's signal because he has never owned the necessary equipment to do so. The devices that Stewts purchased, standing alone, cannot intercept a satellite signal. According to DIRECTV's complaint, in order to receive its satellite signal, legitimately or otherwise, it is necessary to possess at least three items: a DIRECTV satellite dish, a DIRECTV receiver, and a DIRECTV access card (which can be

manipulated through the use of the pirate access devices into receiving DIRECTV's signal without authorization). Stewts testified, and DIRECTV does not dispute, that he has never subscribed to DIRECTV. Further, DIRECTV has not offered any evidence to show that Stewts owns or has ever purchased the necessary DIRECTV equipment. Stewts contends, therefore, that there is an absence of a genuine issue of material fact concerning an essential element of DIRECTV's claim, *i.e.*, intercepting or receiving its satellite signal.

DIRECTV maintains that the summary judgment record raises a reasonable inference that Stewts did indeed intercept, or assisted others in intercepting, its satellite broadcasts. The record contains the following summary judgment evidence: (1) records reflecting Stewts's purchase and possession of at least seven pirate access devices; (2) records indicating that Stewts visited the "pirateden" website, which DIRECTV maintains serves as a forum for the dissemination and exchange of information pertaining to satellite piracy; (3) affidavits from DIRECTV's experts explaining how pirate access devices are used to steal satellite signals, and; (4) an affidavit from DIRECTV Vice President Larry Rissler stating that a DishNetwork satellite dish could be used to receive DIRECTV's signal as long as one also had a DIRECTV receiver and a DIRECTV access card. To defeat summary judgment, the plaintiff need not produce direct evidence to establish that a communication was received or intercepted; rather, it may rely upon circumstantial evidence. *See Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir. 1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including interception). Nonetheless, "the plaintiff must produce circumstantial evidence sufficient to support the conclusion that there was an actual interception." *DIRECTV, Inc. v. Barnes*, 302 F. Supp. 2d

774, 784 (W.D. Mich. 2004). In this case, the circumstantial evidence produced by DIRECTV does not support an inference of actual interception of its signal.

DIRECTV relies on the opinion in *DIRECTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 919-22 (E.D. Mich. 2003) ("*Karpinsky II*") in support of its contention that it has produced sufficient circumstantial evidence to survive Stewts's motion for summary judgment, asserting that the evidence in *Karpinsky II*, in which the defendant's summary judgment motion was denied, is "almost identical to the evidence presented against Defendant Stewts." DIRECTV, however, misconstrues the two *Karpinsky* decisions. In the first *Karpinsky* opinion, the court granted the defendant's summary judgment motion because DIRECTV did not produce evidence sufficient to establish that there was actual interception of its satellite signal. *See DIRECTV, Inc. v. Karpinsky*, 269 F. Supp. 2d 918, 926-927 (E.D. Mich. 2003) ("*Karpinsky I*").

The evidence presented by DIRECTV in *Karpinsky I* is almost identical to that proffered against Stewts—the purchase and possession of pirate access devices, testimony by DIRECTV experts at to the uses of the pirate access devices, and an attestation by Karpinsky that he never owned a DIRECTV receiver or access card. *See id.* Faced with this circumstantial evidence, the court granted the motion for summary judgment, finding that a reasonable fact finder could not infer that Karpinsky unlawfully intercepted DIRECTV satellite signals in light of the evidence that he had never owned the necessary satellite reception equipment. *See id.* Shortly thereafter, DIRECTV moved for reconsideration, citing new evidence that the defendant had, in fact, purchased a DIRECTV system and therefore had the ability to intercept its signals. *See Karpinsky II*, 274 F.Supp. 2d at 921. On reconsideration, the court vacated the summary judgment, finding that the defendant's possession of a DIRECTV system, in conjunction with the pirate access

10

devices, raised a fact issue as to whether he pirated DIRECTV's signal. *See id.* In contrast, in this case, DIRECTV has adduced no evidence that Stewts ever possessed DIRECTV satellite equipment.

The facts in the case at bar are strikingly similar to those of an unreported decision from the Southern District of Texas, in which the court granted the defendant's motion for summary judgment. *See Bush*, slip op. at 8. In *Bush*, DIRECTV failed to produce evidence showing that the defendant had the necessary equipment, beyond the pirate access devices, to intercept its signal. Further, in another unreported decision from the Southern District of Texas, the court granted defendant's motion for summary judgment based on a deficiency in DIRECTV's proof of signal interception. *See DIRECTV, Inc. v. Garnett*, C.A. No. C-03-346, slip op. at 13 (S.D. Tex. Feb. 25, 2004). In *Garnett*, DIRECTV produced evidence that the defendant had purchased and possessed pirate access devices and was a subscriber to DIRECTV, thus possessing the necessary equipment to pirate its signal. *See id.* at 8. The court held, however, that although the defendant admitted to having purchased a pirate access device and owned equipment capable of intercepting DIRECTV's signal, DIRECTV had offered no evidence "that he actually used the device to intercept one of DIRECTV's signals . . ." *Id.* at 11.

Here, the court concludes that the circumstantial evidence proffered by DIRECTV is insufficient to establish the existence of the actual interception of its proprietary satellite signal, an element essential to its case on which it bears the burden of proof at trial. Therefore, summary judgment on this claim is mandated.

D.   Section 2511 of the Wiretap Act

Stewts disputes DIRECTV's claim of violation of § 2511 of the Wiretap Act on the same basis as he challenges the § 605(a) claim, asserting that DIRECTV cannot show actual interception of its signal. Although § 2511 is a criminal provision, a civil right of action is provided by § 2520 to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . ." 18 U.S.C. § 2520(a). Therefore, as with § 605(a) of the FCA, in order to establish its claim that Stewts violated § 2511, DIRECTV must show that its signal was intercepted, disclosed, or intentionally used. *See Beauchamp*, 2004 WL 302346, at *8; *DIRECTV, Inc. v. Boonstra*, 302 F. Supp. 2d 822, 827 (W.D. Mich. 2004). In this situation, as discussed above, DIRECTV has not produced sufficient evidence to raise a genuine issue of material fact as to the interception of its signal. Accordingly, summary judgment on DIRECTV's § 2511 claim is proper.

E.   Section 2512 of the Wiretap Act

Although not raised by Stewts, there is a split of authority as to whether a civil right of action exists for violation of § 2512. *Compare, e.g., DIRECTV, Inc. v. Perez*, 279 F. Supp. 2d 962, 964 (N.D. Ill. 2003) (denying motion to dismiss upon recognizing the existence of a civil right of action) *with DIRECTV, Inc. v. Childers*, 274 F. Supp. 2d 1287, 1289 (M.D. Ala. 2003) (granting motion to dismiss for lack of private right of action). Section 2512 provides in relevant part:

> [A]ny person who intentionally . . . manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of the device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications and that such device or any component thereof has been or will be sent through the mail or

>transported in interstate or foreign commerce . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2512(1)(b).

Section 2520, as written, provides a civil right of action to those whose "wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . ." Some courts have interpreted "in violation of this chapter" to mean any provision set forth in Chapter 119 of Title 18 of the United States Code, the Wiretap Act, thus including § 2512(1)(b). *See DIRECTV, Inc. v. Gatsiolis*, No. 03 C 3534, 2003 WL 22111097, at *2 (N.D. Ill. Sep. 10, 2003); *DIRECTV, Inc. v. Drury*, 282 F. Supp. 2d 1321, 1324 (M.D. Fla. 2003). An equal number of courts, including several within the Fifth Circuit, have focused on the fact that the provision specifies those whose communication was "intercepted, disclosed, or intentionally used" and completely omits mention of the possession or assembly of an interception device provision. These courts have held that § 2520 does not provide a civil cause of action for violation of § 2512. *See DIRECTV, Inc. v. Terry*, No. Civ. A. 2:03-CV-0137-J, 2004 WL 350480, at *1 (N.D. Tex. Jan. 29, 2004); *DIRECTV, Inc. v. Jerolleman*, No. Civ. A. 03-1465, 2003 WL 22697177, at *2 (E.D. La. Nov. 12, 2003).

In addition, the Fifth Circuit has held that the ambit of civil liability for violations of the Wiretap Act is much narrower than the scope of criminal liability. *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir.), *cert. denied*, 532 U.S. 1051 (2001). At issue in *Peavy* was whether civil liability under § 2520 covered those who "procured any other person" to intercept an oral communication in violation of § 2511(b). *Id.* The court reasoned that because § 2520 makes no mention of the "procures any other person" language, a civil right of action is provided

only for the referenced violation, requiring proof that one "intercepted, disclosed, or intentionally used" an electronic communication. *Id.* at 169. Accordingly, the court concludes that § 2512's prohibition against manufacturing, assembling, possessing, and/or selling any device that is primarily useful for the interception of electronic communication is not enforceable through a civil action under § 2520. Therefore, summary judgment on this count is required.

F.   Section 605(e)(4) of the FCA

DIRECTV also alleges that Stewts violated § 605(e)(4) of the FCA, which provides civil damages against a person who:

> [M]anufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services.

Stewts's motion for summary judgment is premised on the notion that DIRECTV has not produced evidence that he intercepted its satellite signal. According to the explicit language of the statute, however, a violation of § 605(e)(4) does not require interception. *See Boonstra*, 302 F. Supp. 2d at 829. DIRECTV argues that based on Stewts's purchase of "a number of devices" that could be used to pirate DIRECTV's signal, it is reasonable to infer that he was engaged in the distribution of those devices. In his sworn deposition, Stewts testified that when he realized he could not manage to create a security system with the devices, he threw them in the trash. DIRECTV has not offered any evidence to the contrary. Moreover, the number of devices was not so great as to refute Stewts's uncontroverted testimony that they were for his personal use in devising a security system. Therefore, the court finds that there is no issue of material fact as to

Stewts's alleged selling or distributing the devices in violation of § 605(e)(4) of the FCA, and summary judgment is warranted on this claim.

### G. The Texas Wiretap Act

In his motion for summary judgment, Stewts does not specifically address DIRECTV's charge that he violated the Texas Wiretap Act. Unlike the Federal Wiretap Act, the Texas Wiretap Act covers not only those who actually intercept electronic communications but also those who attempt to intercept such communications. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 123.002(a)(1). Therefore, DIRECTV need only show that Stewts attempted to intercept its signal. DIRECTV, however, has not produced competent evidence that Stewts attempted to pirate its satellite signal, as discussed previously with regard to the FCA and Wiretap Act counts. Again, DIRECTV's circumstantial evidence is not enough to create a genuine issue of material fact regarding Stewts's alleged violation of the Texas Wiretap Act. Hence, summary judgment on this claim is appropriate.

## III. Conclusion

Accordingly, Stewts's motion for summary judgment is GRANTED. There remain no material facts in dispute as to DIRECTV's claims alleging violation of § 605(a), (e)(3), and (e)(4) of the FCA, §§ 2511 and 2512 of the Wiretap Act, and the Texas Wiretap Act. DIRECTV has failed to present a cause of action that merits relief, and Stewts is entitled to judgment as a matter of law as to DIRECTV's affirmative claims.

IT IS SO ORDERED.

SIGNED at Beaumont, Texas, this 19th day of April, 2004.

_____
Marcia A. Crone
United States District Judge